IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-00357-CMA-MEH

MARCO A. ROCHA,

      Plaintiff,

v.

ARISTEDES W. ZAVARAS, individual capacity,
RON LEYBA, individual capacity,
D. KIEFER, individual capacity,
MCKIBBIN, individual capacity,
S. TWILLEGER, individual capacity,
MARIA RAEL, individual capacity,
VANDETTI, individual capacity,
A. DECESARO, individual capacity, and
D. ROSS, FMCC Sgt., individual capacity,

      Defendants.

---

## RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS

---

**Michael E. Hegarty, United States Magistrate Judge.**

      Pending before the Court is all Defendants but Maria Rael's Motion to Dismiss [filed July 15, 2010; docket #37]. The motion is referred to this Court for recommendation. (Docket #38.) Briefing for this matter is concluded, and oral argument would not materially assist the Court in its adjudication. For the reasons set forth below, the Court **RECOMMENDS** Defendants' motion be **GRANTED IN PART AND DENIED IN PART**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider

## BACKGROUND

Plaintiff is a state prisoner incarcerated in the Colorado Department of Corrections ("CDOC") facility at Burlington, Colorado.  Plaintiff commenced this lawsuit *pro se* on February 19, 2010.  (*See* dockets ##1-3.)  Plaintiff filed his initial complaint on March 3, 2010, and an Amended Complaint on June 30, 2010, pursuant to Section 1983 of 42 U.S.C., stating nine claims alleging violations of his First, Fourth, Eighth and Fourteenth Amendment rights, as well as violations of Section 1985(3) and Section 2000cc-1 of 42 U.S.C.  (Docket #35.)

The Court summarizes Plaintiff's claims as follows: 1) "CDOC Directors" knew prison staff wrongfully confiscated Plaintiff's property, deprived Plaintiff of warm clothing during the winter, and knew that at least one staff member instigated violent gang activity against the Plaintiff; 2) Defendant Leyba knew that a staff member (Defendant Twilleger) instigated violent gang activity against the Plaintiff, "aided by Cpt. Kiefer," allowed Plaintiff's property to be wrongfully confiscated, and allowed the deprivation of warm clothing; 3) Defendants Kiefer, McKibbin and Twilleger wrongfully confiscated Plaintiff's property, including legal papers, warm clothing and other personal items, and such deprivation resulted in Plaintiff's exposure to "extreme cold temperatures" until mid-March 2008; 4) Defendant McKibbin "was responsible" for the confiscation of Plaintiff's property from September 20, 2007 through August 8, 2008, in violation of the First and

---

frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

Fourteenth Amendments, Defendants Kiefer and McKibbin attempted to force Plaintiff to sign a property inventory on September 21, 2007, and Defendant Twilleger assisted them; 5) Defendant Twilleger would not help Plaintiff get his property returned without his signing of a property inventory and accepting a cubic two feet of his legal materials, in October 2007 Defendant Twilleger retaliated against Plaintiff by assigning him to "a less desirable job at CSP kitchen" where Plaintiff would be exposed to cold temperatures, and in June 2008, Defendant Twilleger instigated violent gang activity against Plaintiff; 6) on February 27, 2007, Defendant Rael would not permit Plaintiff to use an available toilet when the other toilet was occupied, in violation of the Eighth Amendment and as part of an ongoing conspiracy; 7) Defendant Ross assisted Defendant Rael in depriving Plaintiff of access to an available toilet, Defendant Ross also restricted Plaintiff's access to the law library and inflicted pain on Plaintiff by handcuffing him to the point of lacerations on Plaintiff's wrists; 8) Defendant Vendetti permitted the assignment of work to Plaintiff exceeding his physical capacity from October 2007 through February 2008, and Defendant Ross injured Plaintiff's wrists with excessively forceful handcuffing; and 9) Defendant DeCesaro knew of these violations upon review of Plaintiff's grievance, thus participated in the alleged conspiracy.  Throughout the statement of his claims, Plaintiff mentions a claim of conspiracy between the Defendants "confirmed" by a statement made by an Officer Muellen (not a named defendant), exclaiming "we'll make a hell of your life."

All Defendants except for Defendant Rael, who has not been properly served, responded to Plaintiff's Amended Complaint with the motion at hand.  Defendants believe the Amended Complaint should be dismissed for four reasons: 1) any claim accruing prior to March 3, 2008, is barred by the statute of limitations; 2) Plaintiff fails to allege adequate personal participation by

Defendants Zavaras, Leyba, Keifer, Ross, and DeCesaro; 3) Plaintiff fails to state a claim upon which relief can be granted regarding the confiscation of his property, retaliation, a First Amendment access to the courts violation, an Eighth Amendment violation, a conspiracy, and an equal protection violation; and 4) Defendants are entitled to qualified immunity. (*See* docket #37.)

In response, Plaintiff contends that the wrongful conduct by Defendants occurred from September 2007 through June 2008. (Docket #46 at 1.) Plaintiff believes that Defendants address only his claims regarding confiscation of his property, placement on "restricted privileges," and a kitchen incident, leaving unaddressed his claims of "corporal punishment" of withholding warm clothing and Defendants' instigation of gang violence against Plaintiff as retaliation. (*Id*. at 2.) Plaintiff argues that his claims did not accrue in the dates listed in his Amended Complaint, but accrued on the date of the final response on his grievance in June 2008, given the nature of his conspiracy claim. (*Id*.) Plaintiff asserts he adequately pleads personal participation of all Defendants under the "strict supervision" and "special relationship" doctrines. (*Id*. at 3.) Finally, Plaintiff challenges Defendants' assertion of qualified immunity. (*Id*. at 8-9.)

Defendants did not file a reply.

## FACTUAL ALLEGATIONS

The Court gleans the following factual allegations from Plaintiff's Amended Complaint:

On September 19, 2007, Plaintiff was moved from Bent County Correctional Facility ("BCCF") to Four Mile Correctional Facility ("FMCC"). (Docket #35 at 5.) On September 20, 2007, at FMCC, Plaintiff was told that he could retain only the portion of his legal papers which would fit into a two cubic foot space, and that he must either donate or mail the remainder. (*Id.*) When Plaintiff refused to do so or to sign a property inventory taking possession of the allowable

4

amount, Defendants Keifer and McKibbin took possession of all of the legal materials and Plaintiff's other personal property.  (*Id.*)  Defendant Twilleger "conformed" to the confiscation conducted by Defendants Kiefer and McKibben.  (*Id.* at 5, 17-18, 20.)

Plaintiff filed a grievance regarding the confiscation of his property on October 1, 2007, which was answered by Defendant Kiefer on October 10, 2007.  (*Id.* at 5, 20.)  Defendant Kiefer informed Plaintiff that his property, except for "hygiene items and under clothing," was returned to Bent County.  (*Id.*)  Plaintiff states that the confiscated items were returned to him in August 2008, "under questionable circumstances."  (*Id.*)

Among the items confiscated were Plaintiff's coat, hat, and gloves, as well as shower shoes, nail clippers, and a "medical truss for [his] umbilical hernia."  (*Id.*)  Because of the confiscation of his coat, hat, and gloves, Plaintiff, during the "coldest months of winter (Oct. 07 to March, 2008) . . . walk[ed] without warm clothing under extreme cold weather in the early hours, five days a week for several months from [his] living unit to the intake area to be transported to work at CSP kitchen." (*Id.* at 18.)  Plaintiff believes "the defendants . . . knew that the deprivation of [his] warm clothing and [his] assignment to be at work from 3:00 a.m. to 11:p.m. [sic] would cause [him] serious bodily harm due to the extreme cold weather."  (*Id.* at 5.)

From October 2007 through February 2008, Plaintiff was assigned alone to a work position which normally requires two workers.  (*Id.* at 5, 26-27.)  Plaintiff describes how Defendant Vandetti would tell Plaintiff to eat lunch at the break time, but other staff would not permit Plaintiff to eat lunch during the break.  (*Id.* at 5.)  On February 8, 2008, one day after Plaintiff had informally complained to Defendant Vandetti about his treatment by non-party prison staff, Defendant Vandetti called Plaintiff to her office, accused him of "disrespecting" said prison staff, and called CSP

security.  (*Id.*)  The security officers then "chained" Plaintiff's "feet and arms" and "dragged" him away, and he was placed in "segregat[ion] for about 4 hours."  (*Id.* at 5-6, 26.)  While being transported back to FMCC, Defendant Ross "re-handcaffted [sic] [Plaintiff's] already lacerated wrists," telling Plaintiff he would be handcuffed for ten to fifteen minutes.  (*Id.*)  Plaintiff was subsequently terminated from his job by Defendant Vandetti for "low work evaluation."  (*Id.*)

On February 27, 2008, while Plaintiff was on "restricted privileges" status, Defendant Rael refused Plaintiff the "emergency" use of a toilet.[2]  (*Id.* at 6, 22.)  This toilet was additional to the toilet available for the 15-20 inmates segregated under restricted privileges status.  (*Id.*)  Defendant Rael told Plaintiff to "get in line" to wait for the segregated area toilet to become available.  (*Id.*)  Defendant Ross, upon being informed of the situation, directed Plaintiff to "stay in your cell . . til [sic] further order," and he remained so restricted for the next four hours.  (*Id.* at 6, 24.)  Defendant Rael filed an incident report against Plaintiff arising from this situation, "accusing" Plaintiff of "disruption" and "disobeying lawful order."  (*Id.* at 6.)  Also in some undescribed connection to these events, Defendant Kiefer "placed [Plaintiff] in 'The hole' prior to any hearing or investigation."  (*Id.*)

After being released from restricted privileges status, on an unspecified day, Defendant Rael ordered Plaintiff to be placed into a cell with a "Black race inmate" rather than a Hispanic inmate, until other prison staff ordered Plaintiff's placement with a Hispanic inmate.  (*Id.*)  On June 8, 2008, two non-party prison staff officers "subjected [Plaintiff] to nefarious interrogation" featuring "abusive language"; one of the non-party staff, Mr. Muellen, allegedly declared he would make "a

---

[2]Plaintiff asserts Defendant Twilleger placed him on restricted status, without a hearing. (Docket #35 at 21.)

hell of [Plaintiff's] life in this place." (*Id.* at 6–7.)

In June 2008, Plaintiff describes how he "learned from other inmates that [his] case manager [Defendant] Twilleger instigated dangerous antagonism from gang members." (*Id.* at 7.) Plaintiff was then transferred from FMCC to a different privately owned correctional facility ("CCCF"), and "[c]oincidently, [Plaintiff] was twice beated [sic] at CCCF by gang members." (*Id.*)

Finally, on January 15, 2010, Plaintiff alleges that, while incarcerated at Sterling Correctional Facility ("SCF") he was placed in segregation by "prison staff" with "a 'North-Sider' gang member," though, as Plaintiff asserts, he is not himself a gang member, and "'north-siders' . . . hate non gang members as [him]self." (*Id.* at 4.)

## STANDARD OF REVIEW

### I.   Construction of a *Pro Se* Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted).  The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188,

1197 (10th Cir. 1989)).  A dismissal "without affording the plaintiff notice or an opportunity to amend is proper only 'when it is patently obvious that plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'"  *Curley v. Perry*, 246 F.3d 1278, 1281–82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110 (additional quotation marks omitted)).

## II.     Rule 12(b)(6): Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level."  *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.

The Rule 12(b)(6) evaluation requires two prongs of analysis.  First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory.  *Id*. at 1949–51.  Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief."  *Id*. at 1951.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id*. at 1950.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. at 1949.

The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Bell Atlantic Corp.*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation marks and citation omitted).

## ANALYSIS

The Court construes the following legal claims from Plaintiff's Amended Complaint: Fourth Amendment wrongful confiscation of property; First Amendment access to the courts due to confiscation of legal materials and for retaliation, namely the confiscation of legal materials due to the filing of lawsuits and by "instigating" gang violence; Section 1985(3) conspiracy asserting Defendants acted in concert against Plaintiff; equal protection contending disparate treatment based on Plaintiff's class or race, arising from the confiscation of his property and the supposed conspiracy against him; Eighth Amendment deprivation of minimal life-care items (shower shoes, photos, utensils, sewing kit, nail clippers), of warm clothing while making him work in the cold, and of a toilet in an "emergency;" Eighth Amendment use of excessive force regarding the aggressive handcuffing incident; and liability of the "CDOC Directors" based on a failure to supervise.  For the following reasons, the Court concludes the bulk of Plaintiff's claims are barred by the statute of limitations, and the remaining claims, except for one as further described below, are properly dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

I.      **Statute of Limitations**

The Tenth Circuit "made clear that the statute of limitations for § 1983 actions brought in

Colorado is two years from the time the cause of action accrued." *Fogle v. Pierson*, 435 F.3d 1252,

1258 (10th Cir. 2006). "A Section 1983 action 'accrues when facts that would support a cause of

action are or should be apparent.'" *Id.* (quoting *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir.

1995)).

Fed. R. Civ. P. 3 prescribes that "[a] civil action is commenced by filing a complaint with

the court." In lawsuits initiated by an incarcerated person, courts generally accept the legal fiction

that a case may be considered filed upon the delivery of a complaint to prison officials (the doctrine

of constructive filing). *See Jarrett v. US Sprint Commc'ns Co.*, 22 F.3d 256, 259 (10th Cir. 1994)

(citing *Houston v. Lack*, 487 U.S. 266 (1988)) ("a prisoner's notice of appeal is 'filed' when it is

given to prison authorities for mailing to the district court"). Courts reason that a prisoner's

constraints on his ability to file documents implicates giving the prisoner the benefit of the date upon

which he has done everything within his power to file a complaint.

In this case, both the complaint and the motion seeking *in forma pauperis* ("IFP") status were

filed on March 3, 2010. (Dockets ##4, 5.) Plaintiff indicates in the complaint that it was "executed"

on March 1, 2010. (Docket #4 at 33.) The Court accepts this date, March 1, 2010, as the date

Plaintiff commenced this action for purposes of the statute of limitations evaluation.[3] Therefore, any

---

[3]The docket reflects that on February 19, 2010, Plaintiff filed a "Motion for Court Order" and a "Notice of Intent." (Dockets ## 2, 3.) However, neither submission was a complaint or an IFP motion. Although Magistrate Judge Boland ordered the commencement of the civil action, Plaintiff was directed to cure his deficiencies by either filing an IFP motion or paying the filing fee and filing a complaint. In other words, on February 19th, Plaintiff had not done everything that he could to file his complaint. He had neither paid the filing fee and filed the complaint, nor had he filed an IFP motion. Therefore, the Court declines to credit Plaintiff with the February 19th filing date for purposes of the statute of limitations.

event complained of by Plaintiff accruing before March 1, 2008, is outside of the applicable statute of limitations period.

All but the following allegations occurred before March 1, 2008: Plaintiff's incarceration with a "Black race inmate" facilitated by Defendant Rael; "nefarious interrogation of Plaintiff on June 8, 2008, by two non-party prison staff; instigation of gang violence against Plaintiff by Defendant Twilleger in June 2008; and on January 15, 2010, the segregation of Plaintiff with a "North-Sider gang member." Liberally construing Plaintiff's complaint, the Court additionally includes Plaintiff's assertion that he was deprived of warm clothing yet had to walk in the cold, from October 2007 through March 2008. The remaining claims accrued, as evidenced by Plaintiff's description of his version of the facts, before March 1, 2008, and thus are barred by the statute of limitations. In the interests of a thorough analysis, however, the Court further determines that these claims are properly dismissed pursuant to Fed. R. Civ. P. 12(b)(6), as discussed below.

Plaintiff's charge of conspiracy requires further analysis of Defendants' statute of limitations defense. Plaintiff brings his conspiracy claim under Section 1985(3) of 42 U.S.C. "The limitations period for a § 1985(3) action 'runs from the occurrence of the last overt act resulting in damage to the plaintiff.'" *Lyons v. Kyner*, 367 F. App'x 878, 882 (10th Cir. 2010) (quoting *Bell v. Fowler*, 99 F.3d 262, 270 (8th Cir. 1996)). Therefore, if Plaintiff successfully pled a Section 1985(3) conspiracy, the statute of limitations would not bar those allegations which occurred more than two years prior to March 1, 2010, because some of the allegations occurred within the two year period. However, as discussed below, Plaintiff fails to state an actionable Section 1985(3) conspiracy claim, thus the statute of limitations is not tolled.

## II.    Lack of Personal Participation

Defendants contend that Plaintiff has not sufficiently alleged personal participation by Defendants Zavaras, Leyba, Keifer, Ross, and DeCesaro.  Defendants argue that Plaintiff named these particular defendants due to their positions as supervisors, "currently or at one time in the past." (Docket #37 at 6.) Defendants correctly state that vicarious liability is inapplicable to Section 1983 lawsuits.  (*Id*. at 5.)

In *Dodds v. Richardson*, 614 F.3d 1185 (10th Cir. 2010), the Tenth Circuit recognized that the Supreme Court, in *Aschcroft v. Iqbal*, 129 S. Ct. 1937 (2009), further narrowed the already limited theory of supervisory liability.  The *Dodds* court explained *Iqbal*'s holding that "when a plaintiff sues an official under *Bivens* or § 1983 for conduct 'arising from his or her superintendent responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Dodds*, 614 F.3d at 1198 (quoting *Iqbal*, 129 S. Ct. at 1949).

Here, Plaintiff does not allege any facts at all related to Defendant Zavaras' role in this matter, other than a conclusory statement that "the defendant abused authority and/or power of decision during the conduction of duties and responsabilities [sic]."  (Docket #35 at 2.)   This statement fails to meet the *Iqbal* pleading standard.  Plaintiff's only complaint against Defendant DeCesaro is that he had knowledge of Plaintiff's claims through the grievance process yet failed to act.  "The denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).  Therefore, the Court finds that Defendants' motion should be granted as to Defendants Zavaras and DeCesaro.

Plaintiff asserts that Defendant Leyba, the Warden of the facility, is culpable due to his authority and responsibility over prison operations and staff performance.  Plaintiff contends Defendant Leyba allowed prison staff to allegedly violate Plaintiff's constitutional rights, namely, permitted Defendant Twilleger to instigate violent gang activity, permitted the wrongful confiscation of Plaintiff's property, and permitted the deprivation of warm clothing alleged by Plaintiff.  Plaintiff does not provide any facts supporting these conclusory assertions, nor does Plaintiff articulate a state of mind on part of Defendant Leyba that could give rise to supervisory liability.  The Tenth Circuit clearly concluded that, in Section 1983 actions, "[e]very governmental official in the chain of command is liable only for his own conduct."  *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1155 (10th Cir. 2006).  As vicarious liability is inapplicable to Section 1983 lawsuits, this Court determines that the Defendants' motion should be granted as to Defendant Leyba.

Regarding Defendants Kiefer and Ross, the Court believes Plaintiff adequately alleges personal participation on behalf of these defendants; however, the factual allegations do not amount to any colorable constitutional violation, as further described below.

## III.    Failure to State a Claim

### A.    *Fourth Amendment Wrongful Confiscation of Property and First Amendment Access to the Courts*

Plaintiff complains that during a transfer to a different facility, he had "to donate or mail out all [his] legal materials except a 2.2 cubic Ft. [sic] amount."  (Docket #35 at 5.)  Plaintiff describes how he refused "to sign a property inventory and accept possession of only 2x2 ft. amount," thus prison staff confiscated all of the materials, including legal papers and personal items.  (*Id.*)  Plaintiff believes this act violates his Fourth Amendment rights.  Plaintiff also suggests the confiscation of his legal materials violates his First Amendment right to access the courts.  The Court disagrees.

13

In *Searcy v. Simmons*, the Tenth Circuit explained how "it is well-settled that '[w]hile an inmate's ownership of property is a protected property interest that may not be infringed without due process, there is a difference between the right to own property and the right to possess property while in prison." 299 F.3d 1220, 1229 (10th Cir. 2002) (citation omitted). The Tenth Circuit agreed with the lower court's reasoning in that matter, in that "the requirements of procedural due process were met when the prison authorities provided [the prisoner plaintiff] the opportunity to dictate where to send the property" that the authorities had confiscated. *Id.*

In *Cosco v. Uphoff*, the Tenth Circuit utilized the Supreme Court's analysis in *Sandin v. Conner* to determine that state prison regulations regarding the type and quantity of individual possession in prison cells were valid. 195 F.3d 1221, 1224 (10th Cir. 1999) (citing 515 U.S. 472, 486 (1995)). The *Sandin* test requires the Court to determine whether "the prison condition complained of presents 'the type of atypical, significant deprivation in which a State might conceivably create a liberty [or property] interest.'" *Id.* Important to the matter at hand, the Tenth Circuit previously concluded that "a prison rule limiting the amount of legal material that a prisoner could retain in his cell was reasonable and necessary and did not violate the constitutional right of access to the Courts." *Clemmons v. Davies*, 86 F.3d 1166, 1996 WL 282283, at *3 (10th Cir. 1996) (unpublished) (citing *Green v. Johnson*, 977 F.2d 1383, 1390 (10th Cir. 1992) (evaluating a prison rule permitting inmates two cubic feet of legal materials in their cells)).

Another court in this district addressed similar facts in *Whitington v. Steinbeck*, No. 07-cv-00663-LTB-KMT, 2009 WL 5491590 (D. Colo. Dec. 9, 2009). In *Whitington*, a CDOC inmate housed at the Sterling Correctional Facility challenged the confiscation of his paperwork. 2009 WL 5491590 at *12. The plaintiff was warned that he had an amount of documents in his cell which exceeded the amount permitted by the CDOC. The plaintiff "was directed to either send the

14

documents to an attorney or destroy them." *Id.* The plaintiff did not do so, thus CDOC prison officials entered his cell and seized the documents, including documents obtained through discovery, court pleadings, and medical records, as well as other property.

The *Whitington* court found that because the plaintiff did not take the opportunity to sort through his documents, he did not demonstrate that the alleged injury outweighed the safety interests embodied in the CDOC's regulation. *Id.* at *13. This finding was in response to the plaintiff's assertion that the confiscation of legal documents would impede the litigation of his claims. The *Whitington* court cited to *Green*, in which the Tenth Circuit concluded that the two-cubic feet regulation, as applied to legal materials, is "reasonable and necessary for orderly maintenance of the facility and proper security." *Id.* (citing 977 F.2d at 1390.)

In light of the described Tenth Circuit precedent, the Court concludes that the property limitations exercised by Defendants do not constitute an atypical hardship, are consistent with CDOC regulations and thus, do not violate the Fourth or First Amendments as Plaintiff claims. Plaintiff admits he had the opportunity to narrow down his property and paperwork to fit within the regulation parameters. (*See* docket #35 at 5 (describing how he could opt "to donate or mail out" excess papers).) Similar to the plaintiffs in *Whitington* and in *Searcy*, Defendants afforded Plaintiff the appropriate due process before seizing the papers by giving him the opportunity to choose which papers to retain and by providing Plaintiff with the opportunity to mail the papers elsewhere. This process, and the validity of the regulation itself, demonstrate to the Court that Defendants' confiscation of Plaintiff's property is a permissible exercise of prison staff discretion in the handling of prison affairs.[4] Therefore, the Court determines Plaintiff does not state a plausible claim for relief

---

[4]Prison officials retain great discretion in the handling of prison affairs, for the purpose of managing prisons safely and effectively. *See, e.g., Meachum v. Fano*, 427 U.S. 215 (1976).

related to the confiscation of his property, pursuant to the Fourth or First Amendment.

### B.      First Amendment Retaliation

Plaintiff mentions two alleged violations of his First Amendment rights, one which the Court disposed of above, regarding the violation of his right to access the courts by the confiscation of his property.  The remaining First Amendment claim asserts that Defendant Twilleger retaliated against Plaintiff for his filing of grievances and lawsuits by instigating gang violence against him. Defendants do not address this claim in their motion to dismiss.

Plaintiff describes how in June 2008, he heard from other inmates that Defendant Twilleger "instigated dangerous antagonism from gang members against [him], so they would 'take care' of [him]." (Docket #35 at 7, 21.)  Plaintiff avers that  Defendant Twilleger made this suggestion to the gang members "as a personal response to [his] grievances" filed "concerning Mrs. Twilleger's decision to place [him] under 'restricted status.'"  (*Id*. at 21.)  Plaintiff explains that he was then moved to a private prison where he "was twice beated [sic] . . . by gang members without any logic [sic] explanation but the mentioned case manager's [Twilleger] dangerous instigation."  (*Id*. at 7.)

"It is well-settled that '[p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts." *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (citing *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990)).  Plaintiff may make a showing of retaliation by demonstrating the following: 1) he was engaged in constitutionally protected activity; 2) Defendant Twilleger's actions caused Plaintiff "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity;" and 3) Defendant Twilleger's "adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct."  *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007) (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)).

The Court finds that Plaintiff plausibly pleads all three elements.  Plaintiff engaged in the constitutionally protected activity of filing grievances, being beaten by gang members at the behest of a prison staff member would indeed chill a person of ordinary firmness from continuing to file grievances, and as Plaintiff describes, Defendant Twilleger's alleged instigation of the gang violence arose from Plaintiff's filing of two grievances related to her decision regarding his status.  *See Gee*, 627 F.3d at 1189 (similar analysis).  Notably, these events allegedly occurred in June 2008, within the permissible period of time for statute of limitations purposes.  Therefore, the Court believes that Plaintiff's Claim Five against Defendant Twilleger should be permitted to proceed, to the extent it asserts a First Amendment retaliation claim.

### C.     *Eighth Amendment Deprivations and Excessive Force*

The  Court  construes  five  subparts  to  Plaintiff's  complaints  pursuant  to  the  Eighth Amendment: 1) deprivation of personal life-care items (shower shoes, photos, utensils, sewing kit, nail clippers); 2) deprivation of warm clothing while Plaintiff walks in cold temperatures from his living unit to the facility's intake area to be transported for work; 3) deprivation of a toilet in an "emergency;" 4) subjection to working a job designed for two people; and 5) excessive use of force by Defendant Ross and other non-party prison staff when handcuffing Plaintiff.

### i.     *Deprivation of Personal Items*

"[O]nly deprivations of essential human needs trigger the Eighth Amendment proscription against cruel and unusual punishment."  *Gillihan v. Shillinger*, 872 F.2d 935, 941 (10th Cir. 1989) (internal quotation omitted).  Shower shoes, photos, utensils, a sewing kit, and nail clippers are not items necessary to essential human needs.  These items are comparable to the items at issue in *Gillihan*, namely "cigarettes, coffee, and personal hygiene items."  *Id*. at 937.  The Tenth Circuit determined  the  deprivation  of  these  items  did  not  constitute  cruel  and  unusual  punishment.

Consistent with *Gillihan*, the Court determines that this allegation does not state a plausible claim of an Eighth Amendment violation.

### ii.  *Deprivation of Warm Clothing*

Plaintiff asserts that his warm clothing was confiscated along with his legal materials and other personal items.  As a result, Plaintiff explains that he had to "walk five days a week for several months under subzero weather and freezing winds in the early hours from [his] living unit to the facility's intake area, to be transported to work at the CSP kitchen without coat [sic] or warm hat." (Docket #35 at 15.)

To trigger the Eighth Amendment, the complained-of conditions must be "sufficiently serious so as to deprive inmates of civilized measures of life's necessities ... [or] so as [to] constitute a substantial risk of serious harm."  The conditions should be considered as a whole if they have a "mutually enforcing effect that produces the deprivation of a single, identifiable human need such as . . . warmth . . . for example, a low cell temperature at night combined with a failure to issue blankets."  *Wilson v. Seiter*, 501 U.S. 294, 304 (1991).  The District Court has previously held that a plaintiff confined in a dry cell for three days with a mattress, blanket, and shirt, while the ambient temperature was 40-45 degrees, did not state an objective conditions-of-confinement claim. *Mauchlin v. Bier*, No. 07-cv-02593-CMA-MEH, 2010 WL 419397, at *4 (D. Colo. Jan. 28, 2010).

Here, Plaintiff is certainly wearing a shirt and pants (*see* docket #35 at 15) and does not assert that he is subjected to cold temperatures for any longer than the time it takes to walk from his living unit to an intake area in the same facility.  Moreover, Plaintiff describes no adverse result from the assumptively brief exposure to cold weather, other than the discomfort the Court can assume results from being temporarily cold.  "The Eighth Amendment does not mandate comfortable prisons, and conditions imposed may be restrictive and even harsh."  *Barney v.*

*Pulsipher*, 143 F.3d 1299, 1311 (10th Cir. 1998) (internal quotations omitted). The Court concludes that Plaintiff's claim regarding his commute in cold weather does not state an objectively plausible Eighth Amendment violation.

### iii.   *Temporary Deprivation of Toilet*

Plaintiff contends that Defendants Rael and Ross deprived him of access to an available toilet for four hours. (Docket #35 at 22.) Though it is likely that this claim is barred by the statute of limitations, it also fails to state a claim on the merits. Plaintiff's claim, in essence, is that although there was a toilet allotted for inmates in segregation such as himself, Plaintiff desired to use a different toilet outside of segregation. Plaintiff alleges that inmates were commonly allowed this "emergency" use of other toilets, but that in this instance he was told to return to his cell, and so remained for four hours until he was released for "lunch time." (*Id.*)

To state an Eighth Amendment conditions of confinement claim, Plaintiff must "show that conditions were more than uncomfortable, and instead rose to the level of 'conditions posing a substantial risk of serious harm' to inmate health or safety." *DeSpain v. Uphoff*, 264 F.3d 965, 973 (10th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1970)). The Tenth Circuit determined there is "no doubt that toilets can be unavailable for some period of time without violating the Eighth Amendment." *DeSpain*, 264 F.3d at 974 (citation omitted). Certain factual situations can meet the standard for a conditions of confinement claim; however, most of these cases concern the deprivation of a toilet for a significantly lengthier amount of time, resulting in the prisoner being exposed to his own excrement or urine in close proximity for a number of hours much greater than four. *E.g., McBride v. Deer*, 240 F.3d 1287, 1292 (10th Cir. 2001) (finding "sufficiently serious conditions of confinement" where inmate lived in feces-covered cell for three days); *Johnson v. Lewis*, 217 F.3d 726, 733 (9th Cir. 2000) (violation of the Eighth Amendment found where "state

imposed conditions inescapably resulting in prisoners wetting each other with urine"); *Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir. 1990) ("courts have been especially cautious about condoning conditions that include an inmate's proximity to human waste"); *Kettering v. Harris*, No. 06-cv-01989-CMA-KLM, 2009 WL 508348, at *23-24 (D. Colo. Feb. 27, 2009) (deprivation of a toilet for forty-four hours "and sleeping in close proximity to . . . own feces . . . posed a substantial risk of serious harm"). Compared to these cases, the facts presented here do not state an Eighth Amendment conditions of confinement claim, as Plaintiff did not have access to a toilet for a limited period of four hours with no described objectively negative consequences.

iv.    *Working a Two-Person Job*

Plaintiff alleges "in numerous occasions [he] was assigned to work at 'pots & pans' by [him]self in a position requiring at least two workers, in clearly [sic] excess of [his] physical capacity." As stated by the District Court, "in order to have a cognizable Eighth Amendment claim against prison officials, a Plaintiff must allege facts demonstrating that: (1) the deprivation Plaintiff suffered is 'sufficiently serious' (objective standard), and (2) the official had a culpable state of mind (subjective standard)." *Quintana v. Doe*, No. 09-cv-00946-CMA-KLM, 2010 WL 2650052, at *4 (D. Colo. June 30, 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The Court concludes Plaintiff fails to state an Eighth Amendment claim here, for two reasons. One, Plaintiff does not identify the alleged offender, thus the Court cannot evaluate the second subjective prong. Two, Plaintiff mentions no legal basis for the conclusion that these facts present an objectively serious deprivation or condition. The Court, in its discretion, is not compelled by the idea that working a two-person job on occasion constitutes cruel and unusual punishment. Therefore, the Court concludes Plaintiff does not meet the two-pronged test for stating an Eighth Amendment claim regarding his objection to sometimes working a two-person task in the prison facility's kitchen.

v.      *Excessive Force in Handcuffing*

Plaintiff describes a handcuffing incident occurring February 8, 2008. The alleged scenario does not provide a legitimate basis for relief. Plaintiff asserts he was handcuffed and subjected to excessive force by non-party prison staff taking him to the segregation unit, after Defendant Vandetti called for security. (Docket #35 at 5-6.) He does not allege that Defendant Vandetti participated in the incident, authorized or caused the incident, or even that Defendant Vandetti was present or knew of the conduct of the security personnel. Additionally, Plaintiff asserts that Defendant Ross re-handcuffed his "already lacerated wrists" to return him from the segregation unit. (*Id*. at 6.) The Court determines that this use of force is de minimus and not prohibited by the Eighth Amendment.

"Ordinarily, an excessive force claim involves two prongs: (1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind." *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003) (internal quotation marks and brackets omitted). "An action by a prison guard may be malevolent yet not amount to cruel and unusual punishment." *Marshall v. Milyard*, No. 10-1104, 2011 WL 285563, at *2 (10th Cir. 2011) (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "Even if a use of force is deemed unnecessary after the fact, if it was both de minimus and 'not of a sort repugnant to the conscience of mankind,' it will not sustain an excessive-force claim." *Id*. (quoting *Hudson*, 403 U.S. at 10.)

The Tenth Circuit recently enumerated acts of force seemingly significant but ultimately not in violation of the Eighth Amendment. *Marshall*, 2011 WL 285563 at *3. The *Marshall* court concluded that an allegation of a prison official grabbing and digging his fingernails into a prisoner's arm, resulting in an injury, did not violate the Eighth Amendment. *Id*. The court looked to other circuit's determinations on excessive force in support of its own finding. *Id*. (citing *De Walt v.*

*Carter*, 224 F.3d 607, 610-11 (7th Cir. 2000) (prisoner suffered bruising on his back after a prison officer shoved him into a doorframe after the prisoner called the official "unprofessional;" court concluded act was de minimus); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) ("bumping, grabbing, elbowing, and pushing a prisoner" was not sufficiently serious or harmful); Lunsford v. Bennet, 17 F.3d 1574, 1578, 1582 (7th Cir. 1994) ("hitting prisoner in the head with a bucket, causing daily headaches, was minor use of force insufficient to establish constitutional violation"); *Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir. 1985) ("pushing cubicle-cell wall onto prisoner's leg, causing bruises, was insufficient use of force to state a constitutional violation"); *Olson v. Coleman,* 804 F. Supp. 148, 149-50 (D. Kan.1992) ("single blow to prisoner's head while escorting him into prison, causing contusion, was de minimus use of force not repugnant to conscience of mankind")).

Here, even if the Court were to conclude the robust handcuffing described by Plaintiff constituted an objectively harmful act, Plaintiff does not identify the non-party security guards who handcuffed him in the first instance, nor does Plaintiff allege a sufficiently culpable state of mind on part of Defendant Ross. In any event, the handcuffing, both in the first instance and subsequently by Defendant Ross, does not constitute an objectively harmful wrongdoing, particularly compared with the litany of scenarios described by the Tenth Circuit, which the Court perceives as significantly more serious with far less of a legitimate penological interest at stake. Therefore, the Court concludes Plaintiff fails to state a claim of an Eighth Amendment violation, and these allegations should be dismissed.

### D.    *Section 1985(3) Conspiracy and Equal Protection Claims*

Throughout his Amended Complaint, Plaintiff alleges Defendants acted in concert against him to "deprive [him] [his] right to possess property, right to petition or access to the courts . . .

22

[and] be free from an unequal treatment." (*See* docket #35 at 9, 18.)  Plaintiff brings this claim pursuant to Section 1985(3) of 42 U.S.C.  "The essential elements of a § 1985(3) claim are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993).  "§ 1985(3) applies only to conspiracies motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *Hall v. Wilson*, No. 10-cv-01460-BNB (CMA), 2010 WL 3310357, at *2 (D. Colo. Aug. 18, 2010) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

Defendants contend that Plaintiff "has provided nothing other than his conclusory allegations in support of his theory that Defendants engaged in a conspiracy against him." (Docket #37 at 15.) The Court agrees.  In his response, Plaintiff refers to a statement made by a non-party, Officer Muellen, as the factual basis for his theory of conspiracy.  (Docket #46 at 2.)  Officer Muellen allegedly stated that "we'll make a hell of your life in this place." (Docket #35 at 21.)  Plaintiff references his Exhibit B to support this assertion.[5]  In Exhibit B, however, the speaker is quoted instead as saying "*I* will make a hell of your life in this place."[6] (*Id.* at 31 (emphasis added).)  The significant weight Plaintiff attaches to the first person *plural* pronoun is based on Plaintiff's mis-characterization of his own exhibit.  Even if the quote was correctly stated, Plaintiff provides no further factual explanation for a conspiracy claim other than simple statements reflecting elements

---

[5]The Court notes that Plaintiff also makes various reference to "Exhibit H."  No such exhibit was included with Plaintiff's Complaint, and Plaintiff has not otherwise directed the Court to where it may be found.  *See SEC v. Thomas*, 965 F.2d 825, 827 (10th Cir. 1992) (noting that a court is not obligated to sift through the record to find support for a party's case).  The Court therefore does not give independent weight to these references.

[6]Interestingly, Exhibit B is dated July 29, 2008, which is temporally well after the majority of the facts giving rise to Plaintiff's alleged claims.  (Docket #35 at 31.)

of the claim.  The Court "need not accept conclusory allegations without supporting factual averments."  *Cooper v. Belcher*, No. 08-cv-01599-CMA-KMT,  2010 WL 3359709, at *3 (D. Colo. Aug. 25, 2010) (citing *S. Disposal, Inc. v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998)).

Plaintiff does not describe a conspiracy, as he does not specify which defendants conspired or how they did so.  Other than the allegation of retaliation limited to Defendant Twilleger, the Court finds that Plaintiff fails to state a claim of any constitutional violation.  It logically follows that Plaintiff thus fails to state an act in furtherance of the supposed conspiracy resulting in a deprivation of some constitutional or statutory right.

As to animus based on race or class, this part of the conspiracy claim ties in with Plaintiff's vague references to violations of the Equal Protection Clause.  *See also Rocha v. CCCF Admin.*, No. 09-cv-01432-CMA-MEH, 2009 WL 6312279, at *5 (D. Colo. Oct. 6, 2009) (same Plaintiff, Mr. Rocha, failed to state a claim of conspiracy because he made no allegation of race or class-based animus).  Plaintiff simply states that other "similarly situated" inmates were not deprived of their personal items, like Plaintiff.  (*See* docket #35 at 10.)  Plaintiff also offers legal conclusions that he was subjected to "'class of one' discrimination involving disparate treatment" and "extreme disparate treatment."  (*Id*. at 9.)  These conclusory statements do not meet the Rule 12(b)(6) plausibility pleading standard.  *E.g., Gee*, 627 F.3d at 1195 (failing to identify or describe an actual policy or practice of racism or discrimination does not meet pleading standards); *Thomas v. N.M. Corr. Dep't*, 272 F. App'x 727, 729 (10th Cir. 2008) (conclusory allegations of treatment unlike similarly situated inmates without additional information is insufficient to state an equal protection claim).  For these reasons, the Court concludes that Plaintiff fails to state a colorable conspiracy or equal protection claim, and these allegations should be dismissed.

IV.    **Qualified Immunity**

Defendants assert an entitlement to qualified immunity.  (*See* docket #37 at 16.)  Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  It is an entitlement to not stand trial or face the other burdens of litigation.  *Ahmad v. Furlong,* 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted).  The privilege is an immunity from suit rather than a mere defense to liability.  *Id.*

The Supreme Court recently discarded a review process that required courts to examine these questions sequentially, first considering whether a right had been violated, and then second - if the court concluded a right had been violated - whether that right was clearly established at the time of the alleged violation.  *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 816-22 (2009).  *Pearson* retired this process, instead affording courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id.* at 818; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

As stated above, the Court determines that Plaintiff does not establish that any defendant violated a constitutional or statutory right, with one exception.  The Court believes Plaintiff states a plausible claim of retaliation against Defendant Twilleger.  As the elements of retaliation were well-settled at the time of the alleged wrongdoing, the Court concludes that, at this stage of the litigation, Defendant Twilleger is not entitled to qualified immunity.  The Court recommends Defendants' motion be granted in part and denied in part to this extent; all Defendants other than Defendant Twilleger are entitled to qualified immunity, because Plaintiff fails to state a claim of a violation of a constitutional or statutory right, outside of the limited retaliation claim against Defendant Twilleger.

## V.    Plaintiff's Failure to Properly Serve Defendant Maria Rael

As a final matter, the Court notices that Defendant Rael has not been properly served.  The remaining Defendants represent that Defendant Rael "is no longer an employee of the Colorado Department of Corrections."  (Docket #37 at 1.)  The returned summons demonstrates that the United States Marshals Service made four attempts to serve Ms. Rael (each attempt being a two-hour endeavor) without success.  (Docket # 36 at 1.)  Ms. Rael no longer resided at the address given for her, and there was no forwarding address.  (*Id.*)

The Court must liberally construe *pro se* filings, and the Court recognizes that Plaintiff is a prisoner with obvious constraints on his activities.  However, neither *pro se* status, nor status as a prisoner excuse the obligations of any litigant to comply with the same rules of procedure that govern other litigants.  *See Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992); *see also Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).  Pursuant to Fed. R. Civ. P. 4(m), plaintiffs must serve defendants with notice of the suit within 120 days of the filing of the complaint.  Plaintiff's Complaint was filed on March 3, 2010, thus service on Defendant Rael was due by June 29, 2010. Although Plaintiff proceeds IFP, it is ultimately his responsibility to provide correct contact information for defendants he names.  The Court concludes that Defendant Rael should be dismissed without prejudice for Plaintiff's failure to prosecute his action by providing correct contact information for the proper effectuation of service.  However, as described herein, the Court recommends that the claims against Defendant Rael be dismissed for failing to state a claim upon which relief may be granted; the Court therefore recommends the claims against Defendant Rael be dismissed with prejudice.

## VI.    Dismissal With Prejudice, Without Leave to Amend

"Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an

opportunity to amend." *Gee*, 627 F.3d at 1195.  Amendment would be futile when a claim is barred by the statute of limitations.  *Id*.

Here, the bulk of Plaintiff's claims fall outside of the statute of limitations period, that is, before March 1, 2010.  The only allegations within the limitations period that refer to an actual claim or defendant identified in Plaintiff's complaint are the handcuffing and excessive force by non-party prison staff, the retaliation by Defendant Twilleger, and, liberally construed, the deprivation of warm clothing during Plaintiff's daily commute.  The Court recommends the claim against Defendant Twilleger be permitted to proceed.  Regarding the excessive force and conditions of confinement claim, the Court does not believe amendment would remedy the legal deficiencies explained by the Court above (this belief extends to the claims outside of the limitations period, as well).  Thus, the Court concludes an opportunity to amend would be futile in this matter, and all claims and defendants other than Claim Five, limited to retaliation, against Defendant Twilleger should be dismissed with prejudice.

## VII.    Three Strikes Rule

The Prison Litigation Reform Act provides for a "three strikes" rule against prisoners who frequently avail themselves upon the judiciary for asserted relief. 28 U.S.C. § 1915(g) (West 2011).  "Prisoners obtain a 'strike' against them for future ifp eligibility when their 'action or appeal in a court of the United States . . . was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted . . . ." *Hafed v. Fed. Bureau of Prisons*, Nos. 09-1090, 09-1365, 2011 WL 338417, at *1 (10th Cir. 2011).  "When an action or appeal is dismissed as frivolous, as malicious, or for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B), the dismissal counts as a strike." *Id.* at *2.  "A strike counts against a prisoner from the date of the Supreme Court's denial or dismissal of a petition for writ of certiorari, if the prisoner filed one, or from the date when the time to file a petition for writ of certiorari expired, if he did not." *Id.*

Upon review of the Court's electronic filing system, the Court sees that Plaintiff has filed seven civil rights actions in this district: Nos. 93-cv-02401-SGF (dismissed), 02-cv-00707-ZLW (dismissed for failure to pay initial partial filing fee, not appealed), 04-cv-02298-ZLW (dismissed as legally frivolous, appealed and affirmed), 09-cv-01432-CMA-MEH (dismissed for failure to state a claim, appealed and affirmed), 10-cv-00357-CMA-MEH (the matter at hand), 10-cv-00710-ZLW (summarily remanded to Crowley County), and 10-cv-01272-PAB-KMT (pending recommendation for dismissal with prejudice due to failure to state a claim). Plaintiff has also filed five unsuccessful Section 2254 habeas petitions, Nos. 93-cv-02667-DBS, 94-cv-01533-DBS-RMB, 96-cv-00461-ZLW, 00-cv-02445-ZLW, and 04-cv-02195-ZLW.

Considering the volume of cases filed, the Court believes Plaintiff is a "frequent filer," as contemplated by the statute and described by the Tenth Circuit in *Hafed*. Pursuant to the terms explained in *Hafed*, it appears to the Court that Plaintiff already has two strikes against him, arising from cases 04-cv-02298-ZLW (dismissed as legally frivolous, appealed and affirmed) and 09-cv-01432-CMA-MEH (dismissed for failure to state a claim, appealed and affirmed). Presently, upon the entry of this recommendation, two more of Plaintiff's cases (this matter and 10-cv-01272-PAB-KMT) will be subject to possible dismissal for failure to state a claim. The Court recognizes that the order and appeal process must be complete before a third strike can count against Plaintiff. However, the Court believes that memorializing the record of Plaintiff's filings in this district is important for the intent of Section 1915(g), thus, the Court provides this recounting of Plaintiff's cases for that purpose.

## **CONCLUSION**

Accordingly, the Court **RECOMMENDS** Defendants Motion to Dismiss [filed July 15, 2010; docket #37] be **GRANTED IN PART and DENIED IN PART**.[7]  The Court recommends that all claims and defendants be dismissed with prejudice, with the exception of Claim Five against Defendant Twilleger, limited to a First Amendment claim of retaliation.

Respectfully submitted this 23rd day of February, 2011, at Denver, Colorado.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge

---

[7]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  Fed. R. Civ. P. 72.  The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).