IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-00357-CMA-MEH

MARCO A. ROCHA,

      Plaintiff,

v.

S. TWILLEGER, individual capacity,

      Defendant.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**Michael E. Hegarty, United States Magistrate Judge.**

      Before the Court are Defendant's Motion for Summary Judgment [filed September 9, 2011; docket #105], Plaintiff's Motion for Summary Judgment [filed September 12, 2011; docket #110], and Plaintiff's Second Motion for Injunction [filed November 14, 2011; docket #131]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the motions have been referred to this Court for recommendation [dockets ##107, 111, and 132 ]. All three motions have been fully briefed, and oral argument would not materially assist the Court in its adjudication of the motions. For the reasons that follow, the Court respectfully recommends that the Defendant's Motion be **granted** and both of Plaintiff's Motions be **denied**.[1]

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. §

## I.     Background

Plaintiff is a state prisoner incarcerated in the Colorado Department of Corrections ("CDOC") facility at Burlington, Colorado.  Plaintiff commenced this lawsuit on February 19, 2010 and is proceeding *pro se*.  (*See* Dockets ##1-3.)  Plaintiff filed his initial complaint on March 3, 2010, and an Amended Complaint on June 30, 2010, pursuant to 42 U.S.C. § 1983, alleging nine claims for violations of his First, Fourth, Eighth and Fourteenth Amendment rights, as well as for violations of 42 U.S.C. § 1985(3) and 42 U.S.C. § 2000cc-1.  (Docket #35.)

On March 29, 2011, the District Court adopted and affirmed this Court's recommendation issued on February 23, 2011.  (Docket #55.)  The District Court ordered all but one of Plaintiff's claims dismissed; Plaintiff's First Amendment retaliation claim against Defendant Twilleger was permitted to proceed.  (*Id*. at 1.)  In essence, Plaintiff alleges that Defendant instigated gang violence against him by other inmates because of the grievances he filed against her.

Defendant filed a Motion for Summary Judgment on September 9, 2011, arguing that she is entitled to judgment as a matter of law for three reasons.  First, Defendant argues the Plaintiff failed to exhaust his administrative remedies; therefore, Plaintiff's claim is barred by the Prison Litigation Reform Act ("PLRA").  Second, Defendant argues that Plaintiff's claim fails on the merits because Plaintiff has not presented sufficient evidence in support of his retaliation claim.  Third, Defendant argues she is entitled to qualified immunity.

---

636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

Plaintiff also filed a Motion for Summary Judgment on September 12, 2011. (Docket #110.) However, Plaintiff's Motion for Summary Judgment appears to argue that summary judgment is *not* warranted, as Plaintiff asserts that "the record under [his] claims presents genuine issues of material fact under which 'a reasonable jury could return a verdict' in [his] favor ." (*Id.* at 3.) The remainder of Plaintiff's Motion for Summary Judgment attempts to refute the Defendant's entitlement to qualified immunity, but advances no argument regarding the merits of Plaintiff's First Amendment claim. Given the substance of Plaintiff's Motion for Summary Judgment and Plaintiff's apparent concession that genuine issues of fact remain, the Court construes the motion as an additional response to the motion filed by Defendant. The Court will recommend a disposition in accordance with this construction.

In addition to his Motion for Summary Judgment, Plaintiff also filed a Second Motion for Injunction.[2] (Docket #131.) Although Plaintiff's first motion for preliminary injunction was denied [docket #118], Plaintiff's second motion asserts that "recent developments" warrant an order from the Court prohibiting prison staff from harassing, intimidating, or threatening Plaintiff and his witnesses. (Docket #131 at 1.) Notably, Plaintiff does not name Defendant Twilleger in connection with any of the alleged harms. (*See id.*)

In the interest of efficiency, the Court will address the cross motions for summary judgment first, beginning with Defendant's motion for summary judgment. After determining whether summary judgment should be entered in favor of either party, the Court will assess whether a preliminary injunction is warranted.

---

[2]The Court construes Plaintiff's Second Motion for Injunction as a motion for preliminary injunction pursuant to Fed. R. Civ. P. 65.

## II.    Findings of Fact

The Court finds the following facts, which are viewed in the light most favorable to the

Plaintiff, who is the non-moving party in this matter.

1.      Plaintiff is a prison inmate currently incarcerated at Sterling Correctional Facility, but who

was previously incarcerated in the Four Mile Correctional Center ("FMCC").  (Docket #35

at 5.)

2.      Plaintiff was transferred to FMCC on or about September 20, 2007.[3]  (Affidavit of Sherri

Twilleger,  September 9, 2011 ("Twilleger Affidavit") ¶ 7, Docket #105-2.)

3.      Upon his arrival at FMCC, Plaintiff's property was inventoried and inspected in accordance

with Administrative Regulation 850-06.  (*Id.*)

4.      The inventory search revealed that Plaintiff was in possession of eight cubic feet of legal

papers.  Pursuant to Administrative Regulation 850-06, Plaintiff was only permitted to

possess two cubic feet of legal papers.  (*Id.*)

5.      Plaintiff was given an opportunity to sort through his legal papers to determine which papers

he would retain and which papers he would mail out in order to comply with the

Administrative Regulation.  Plaintiff did not do so.  (*Id.*)

6.      On September 21, 2007, Defendant met with Plaintiff for an initial interview to discuss

facility operations, his job options, and his program needs.  (*Id.* at ¶ 8.)

7.      During the meeting, Plaintiff claimed that his property was wrongfully confiscated upon his

arrival at FMCC.  Defendant called the property division to investigate.  (*Id.*)

---

[3] Defendant's affidavit represents that Plaintiff was transferred on September 20, 2011. The Court considers this date an error in light of the fact that Defendant executed her affidavit on September 9, 2011.

4

8.      Defendant learned that prison officials confiscated Plaintiff's property because it exceeded the volume limit of Administrative Regulation 850-06.  Defendant also learned that Plaintiff declined the opportunity to sort through and mail home his excess legal papers.  (*Id.*)

9.      CDOC provides inmates with administrative remedies pursuant to a grievance process set forth in Administrative Regulation 850-04.  (Affidavit of Anthony DeCesaro, September 8, 2011 ("DeCesaro Affidavit")  ¶ 3, docket #105-1.)

10.     Administrative Regulation 850-04 requires an inmate to begin the grievance process by filing a  Step 1 grievance.  (*Id.* at ¶ 4)

11.     If an inmate is not satisfied with the result of the Step 1 grievance, he or she must file a Step 2 grievance.  (*Id.* at ¶ 5.)

12.     If the inmate remains unsatisfied with CDOC's response, he or she must file a Step 3 grievance.  (*Id.*)

13.     An inmate has exhausted his administrative remedies only after he or she has filed a Step 3 grievance  and has received a response from the grievance officer.  (*Id.* at ¶ 6.)

14.     Plaintiff filed a Step 1 grievance on October 1, 2007 alleging that his legal papers were wrongfully confiscated upon his arrival at FMCC.  (Docket #35 at 30.)

15.     Plaintiff claims that he filed the October 1, 2007 grievance against Defendant (*Id.* at 20); however, the October 1, 2007 grievance attached as Exhibit A does not identify Defendant by either name or title.  (*Id.* at 30.)  Instead, the grievance names "Officer McIbbin" as the individual allegedly responsible for making false statements about Plaintiff's property.  (*Id.*)

16.     In February 2008, Defendant placed Plaintiff on "restricted privilege" status after he was terminated from his prison employment for low work performance.  (Twilleger Affidavit at

¶ 12.)

17.    When an inmate is terminated from his or her work assignment with poor work evaluations, it is standard procedure for the inmate's case manager to place the inmate on "restricted privileges." (*Id.*)

18.    Plaintiff claims he filed two grievances against Defendant alleging that his placement on restricted privileges without a hearing was improper. (Docket #35 at 21.) However, Plaintiff has not provided the Court with copies of said grievances.

19.    Defendant was aware that Plaintiff was grieving his placement on restricted privileges because Plaintiff was required  by Administrative Regulation 850-04 to discuss his complaint with his case manager, who is the Defendant in this case. (Twilleger Affidavit at ¶ 15.)

20.    Plaintiff alleges that in June 2008, he heard from two other inmates that Defendant had "instigated dangerous animosity by suggesting gang members [] take care of [him]." (Docket #35 at 21.)

21.    Plaintiff claims that Defendant instigated gang violence against him because of the grievances he filed against her. (*Id.*)

22.    When Plaintiff was at "CCCF[4]," he was allegedly beaten on two occasions "without any logic (sic) explanation but the mentioned case manager's dangerous instigation." (*Id.* at 7.)

23.    Defendant denies instigating gang violence against Plaintiff in response to his grievances. (Twilleger Affidavit at  ¶ 15.)

---

[4]Absent clarification by Plaintiff, the Court interprets this acronym to stand for Crowley County Correctional Facility.

24.    Plaintiff filed a Step 1 grievance numbered 08/09-003 on July 31, 2008 alleging that numerous CDOC staff members, including Defendant, engaged in retaliation arising out of "main incident(s)" that occurred between October 2007 and July 22, 2008.  Plaintiff also refers to an attached memorandum, claiming he received permission to include the memorandum in an interview with "Cpt. Maestas."  (Docket #120 at 6.)

25.    Plaintiff's Memorandum dated July 29, 2008 ("the July 29 Memorandum") states that Plaintiff can provide testimony from other inmates "impl[ying]" that Defendant instigated "antagonism from inmates against [Plaintiff]."  (Docket #35 at 31.)

26.    The July 29 Memorandum contains no reference to grievance 08/09-003.  (*Id.*)

27.    Plaintiff's Step 1 grievance 08/09-003 was reviewed and denied because Plaintiff allegedly failed to follow the proper procedure.   (Docket #120 at 11.)

28.    Shortly thereafter, Plaintiff filed a Step 2 grievance regarding the same issues.  Like the Step 1 grievance, Plaintiff's Step 2 grievance 08/09-003 refers to an attached memorandum. Plaintiff's Step 2 grievance was also denied, citing failure to follow proper procedure.  (*Id.* at 12)

29.    Plaintiff then filed a Step 3 grievance, which, like Plaintiff's previous 08/09-003 grievances, referred to an attached memorandum.  (Docket #119-1, 3.)

30.    Anthony DeCesaro is employed by CDOC as a Step 3 Grievance Officer. (DeCesaro Affidavit at ¶ 1.)  Mr. DeCesaro filed an affidavit in support of Defendant's motion claiming that Plaintiff failed to file a Step 3 grievance concerning the alleged retaliation by Defendant. (*Id.* at ¶ 9.)

31.    Records produced with Defendant's Reply show that Mr. DeCesaro reviewed and denied

Plaintiff's Step 3 grievance 08/09-003.  (Docket #119-1 at 4.)

32.    In his written response to Plaintiff's Step 3 grievance 08/09-003, Mr. DeCesaro states that
       Plaintiff failed to provide sufficient detail in support of his allegations.  After denying
       Plaintiff's request for relief, Mr. DeCesaro notes that "[t]his is the final administrative
       response in this matter and [Plaintiff] ha[s] exhausted [his] administrative remedies."  (*Id.*)

33.    Upon further review of the Plaintiffs's file, Defendant discovered and produced a
       memorandum written by Plaintiff dated July 31, 2011 ("the July 31 Memorandum").  The
       content of the July 31 Memorandum differs from the July 29 Memorandum, but both allege
       that Defendant instigated gang violence against Plaintiff.  (Docket #119-2.)

**III.    Legal Standards**

       A.    Construction of Pro Se Pleadings

       A federal court must construe a pro se plaintiff's "pleadings liberally, applying a less
stringent standard than is applicable to pleadings filed by lawyers.  [The] court, however, will not
supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory
on a plaintiff's behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997)
(quotations and citations omitted).  "If the court can reasonably read the pleadings to state a valid
claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper
legal authority, his confusion of various legal theories, his poor syntax and sentence construction,
or his unfamiliarity with pleading requirements."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.
1991).  However, it is not "the proper function of the district court to assume the role of advocate
for the pro se litigant."  *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998)
(citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

B.     Standard for Summary Judgment

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003).  The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the Court the factual basis for its motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Maldonado v. City of Altus*, 433 F.3d 1294, 1302 (10th Cir. 2006).  The non-moving party has the burden of showing there are issues of material fact to be determined.  *Celotex*, 477 U.S. at 322.  If the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial.  *Hysten v. Burlington N. and Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002); Fed. R. Civ. P. 56(e).  These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), *except* the mere pleadings themselves.'"  *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324) (emphasis added).  The Court must view the record and draw "all favorable inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## IV.    Defendant's Motion for Summary Judgment

Defendant argues that she is entitled to summary judgment for three reasons.  First, Defendant asserts that Plaintiff's claims are barred by the PLRA because Plaintiff failed to exhaust

his administrative remedies.   Second, Defendant argues that Plaintiff has not provided sufficient evidence to support his claim of retaliation.   Finally, Defendant asserts that she is entitled to qualified immunity.   Because the qualified immunity inquiry includes an evaluation of the merits, the Court will address Defendant's second and third arguments together.

A.   Exhaustion of Remedies

Defendant argues she is entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies, as required by the PLRA.   Plaintiff asserts that he did exhaust his remedies by filing a Step 3 grievance to which the CDOC responded.

Under the PLRA, a prisoner may not sue over prison conditions until he or she has exhausted "such administrative remedies as are available."   *See*  42 U.S.C. § 1997e(a); *see also* *Booth v. Churner*, 532 U.S. 731, 733-34 (2001).   The Supreme Court has determined that "exhaustion is mandatory under the PLRA and []unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).   Although the exhaustion of administrative remedies need not be pleaded in the complaint, a defendant may assert failure to exhaust as an affirmative defense. *Id.* at 216.   The PLRA does not articulate a specific standard for fulfilling the administrative remedy obligation, but instead defers to each respective prison to determine whether exhaustion has occurred. *Id.* at 218 ("[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.")

In this case, there is considerable dispute surrounding the issue of exhaustion.   Under the Administrative Regulations of the CDOC, an inmate properly exhausts his or her administrative remedies once he or she has filed a Step 3 grievance and has received a written response.   (DeCesaro Affidavit at ¶6.)   Initially, Defendant asserted that Plaintiff simply failed to file a Step 3 grievance

regarding the alleged retaliation.   (Docket #105 at 9-10.)   In support of her motion, Defendant

produced the Step 1 and Step 2 grievances corresponding to 08/09-003, but claimed, based on the

testimony of Mr. DeCesaro,  that there was no record of the Step 3 grievance.   (DeCesaro Affidavit

at ¶9.)   In his response, Plaintiff maintained that he filed a Step 3 grievance regarding the alleged

retaliation, but that his case manager refused to provide him with a copy of it.   (Docket #115 at 6.)

 Defendant ultimately produced the missing Step 3 grievance [docket #119-1 at 3], but now asserts

that none of the 08/09-003 grievances relate to the alleged retaliation.   (Docket #119 at 4.)

     While the Court agrees that none of Plaintiff's 08/09-003 grievances specifically mention

the alleged retaliation, all three of the 08/09-003 grievances refer directly to a memorandum which

Plaintiff claims he was authorized to file in support of his claims.   As noted above, there are two

different memoranda describing the alleged retaliation: the July 29 Memorandum produced by

Plaintiff [docket #35 at 31], and the July 31 Memorandum ultimately produced by Defendant with

her reply brief [docket #119-2].   Defendant argues that the 08/09-003 grievances could not have

been read in conjunction with any memorandum because neither memorandum refers specifically

to the grievances, and because the memoranda contain different dates.   (Docket #119 at 4.)

     In light of the multitudinous memoranda, which have disappeared and reappeared over the

course of the briefing,  is not clear to the Court whether Plaintiff attached either memorandum to any

of his 08/09-003 grievances.   What is clear, however, is a statement by Mr. DeCesaro in his letter

responding to Plaintiff's 08/09-003 Step 3 grievance: "[t]his is the final administrative response in

this matter and *you have exhausted your administrative remedies*."   (Docket #119-1 at 4, emphasis

added.)   In addition to the considerable controversy surrounding the attachment of a memorandum,

which alone raises issues of fact, the Court is not persuaded by Defendant's argument that Plaintiff

11

failed to exhaust his administrative remedies, particularly when Defendant's own affiant has made clear statements to the contrary.

Based on the various memoranda and the statement from CDOC affirmatively declaring exhaustion of administrative remedies, this Court recommends that the District Court find the Defendant has failed to provide sufficient evidence in support of her affirmative defense.

B.   Qualified Immunity

Defendant asserts that she is entitled to qualified immunity on claims against her in her individual capacity.   Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   It is an entitlement not to stand trial or face the other burdens of litigation.   *Ahmad v. Furlong,* 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted).   The privilege is an immunity from suit rather than a mere defense to liability.   *Id.*   When a defendant asserts the defense of qualified immunity at summary judgment, the burden shifts to the plaintiff to overcome the asserted immunity.   *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009).   "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity."   *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009)).   In this case, the Court will examine first whether the Plaintiff has demonstrated on supported facts that the Defendant violated his constitutional rights.   If the Plaintiff has established sufficient facts to support a constitutional violation, the Court will proceed to determine whether the right was clearly established at the time of the alleged conduct.

Plaintiff's only remaining constitutional claim is a charge of retaliation in violation of the

First Amendment.  In particular, Plaintiff asserts that he filed several grievances against Defendant after his legal papers were taken in an inventory search and that, as a result of those grievances, Defendant instigated gang violence against him.  Defendant argues the Plaintiff has failed to provide sufficient evidence in support of his claim.

The Tenth Circuit has adopted a three-part test which requires plaintiffs alleging retaliation to show:

> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007) (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)).

Defendant makes no argument regarding the first element of *Shero*; however, it is beyond dispute that Plaintiff's filing of grievances constitutes a protected activity.  *See Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (finding that a prisoner's filing of specific grievances against defendants is a constitutionally protected activity).

Turning to the second element of *Shero*, Plaintiff must show that the injury caused by Defendant was sufficiently serious to chill a person of ordinary firmness from continuing to engage in the protected activity.  *Shero*, 510 F.3d at 1203.  Defendant argues that Plaintiff is precluded from establishing sufficient injury because he continued to file grievances even after the alleged retaliation.  (Docket #105 at 16.)  This argument is unavailing and inconsistent with Tenth Circuit precedent.  "[W]hen [a] plaintiff alleges that [a] defendant's action was taken in retaliation for protected speech, [the] standard for evaluating that chilling effect on speech is objective, rather than

13

subjective." *Eaton v. Meneley*, 379 F.3d 949, 955 (10th Cir. 2004).  Thus, the relevant inquiry is not whether Plaintiff was actually deterred from filing grievances, but whether a person of ordinary firmness in Plaintiff's position would have been so deterred.  *See id.*

Although Plaintiff emphasizes the instigation of gang violence as the primary injury, the Court construes Plaintiff's Amended Complaint liberally to allege two injuries: 1) Defendant's instigation of violence;  and 2) any actual violence Plaintiff may have experienced as a result.  With respect to the first injury, the Court finds that the threat of violence arising from the alleged instigation is not sufficiently adverse to chill the protected activity.  *See Walker v. Spence*, 07-cv-01848-PAB-KMT, 2009 WL 3074612, at *9 (D. Colo. Sept. 18, 2009) (finding that a defendant's threat to have an inmate's legs broken was not sufficiently adverse to support a retaliation claim); *see also Teaque v. Hood*, No. 06-cv-01800-LTB-CBS, 2008 WL 2228905, at *10 (D. Colo. May 27, 2008) ("verbal harassment, threats, or taunts do not rise to the level of retaliation.")  Although Plaintiff's second alleged injury goes beyond threats insofar as Plaintiff claims he was beaten by gang members, Plaintiff provides no details regarding the nature or severity of the alleged violence. The Court may construe the allegation broadly, but it declines to speculate regarding what actually occurred between Plaintiff and the so-called gang members.  Moreover, even if Plaintiff had provided adequate detail regarding the injuries he sustained, he has not shown that such injuries were caused by Defendant.  Indeed, Plaintiff admits that he does not know why he was beaten by gang members.  (Docket #35 at 1.)   In the absence of a "logic[al] explanation," Plaintiff simply assumes the alleged beatings were instigated by Defendant.  (*Id.*)  ("*Coincidentally*, I was twice beated (sic) by CCCF gang members *without any logic (sic) explanation*...but the mentioned case manager's dangerous instigation.") (emphasis added.)  Ultimately, it is Plaintiff's burden to show

14

that Defendant caused him sufficiently serious injury to sustain a claim of retaliation.  Plaintiff's

assumption, unsupported by the record, fails to do so.

Finally, Plaintiff must also show that any injury caused by Defendant was substantially

motivated by retaliation.  *Shero*, 510 F.3d at 1203.  Allegations and suspicions of a defendant's

motive will not suffice.  *Peterson*, 149 F.3d at 1444.  Rather, plaintiffs claiming retaliation must set

forth specific facts showing that but for the protected activity, the adverse action would not have

occurred.  *Smith v. Maschner*, 899 F.2d 940, 949-950 (10th Cir. 1990).  Where direct evidence is

lacking,  the Court may, in some instances, infer retaliation when the adverse action occurs in close

proximity to the protected activity.  *See Johnson v. Stovall*, 233 F.3d 486, 489 (7th Cir. 2000)

(finding that a chronology of events was sufficient to survive a motion to dismiss on a claim of

retaliation).  In this case, Plaintiff provides no direct evidence of a retaliatory motive.  However,

the Court reads Plaintiff's Amended Complaint broadly to assert a claim of retaliation based on the

timing of Plaintiff's grievances and the allegedly adverse activity that followed.  Specifically,

Plaintiff filed grievances against Defendant in October 2007 [docket #115 at 4-5], and claims he

learned of the instigation of violence in June 2008.  (Docket #35 at 7).  Plaintiff does not indicate

when the gang  beatings occurred.

At the outset, the Court is not particularly persuaded by a nine-month gap between Plaintiff's

protected activity and Defendant's alleged response.  However, even if the events occurred in closer

proximity, more evidence is needed to survive summary judgment.  *See Strope v. Cummings*, 381

F. App'x 878, 883 (10th Cir. 2010).  In *Strope v. Cummings*, the Tenth Circuit reiterated that

"temporal proximity between a protected activity and a challenged prison action does not, in itself,

demonstrate the causal nexus for a retaliation claim."  *Id.*  The Court reasoned that if a prisoner

15

could rely on timing alone to assert a claim of retaliation, "litigious prisoners could claim retaliation over every perceived slight and resist summary judgment simply by pointing to their litigiousness." *Id.* Unfortunately, gang violence is an increasingly common aspect of prison life. *See Johnson v. California*, 543 U.S. 499, 533 (2005) (describing the recent rise of prison gangs and gang violence across the United States). However, "an inmate is not inoculated  from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he has engaged in protected activity." *Strope*, 381 F. App'x at 883 (quoting *Peterson, supra*). In line with this reasoning, the Court finds that Plaintiff should not be permitted to proceed to trial simply because he filed grievances in October 2007 and was allegedly beaten by gang members nine months later for "no logic[al] reason" beyond Defendant's supposed retaliation.

Considering the entire record, the Court finds that Plaintiff has failed to show sufficient injury to support a claim of retaliation. Morever, Plaintiff has not demonstrated that any injury he may have suffered was the but-for result of the grievances he filed. Accordingly, the Court finds that Plaintiff has not raised a triable issue of fact regarding a violation of his First Amendment rights. At a minimum, Plaintiff has not established that any violation of law by Defendant was clearly established at the time of the alleged conduct. Therefore, the Court recommends the District Court find that Defendant is entitled to qualified immunity and grant the Defendant's motion.

## V.     Plaintiff's Motion for Summary Judgment

As noted above, Plaintiff's Motion for Summary Judgment does not address the merits of his First Amendment claim, but instead argues that genuine issues of fact remain. In light Plaintiff's contradictory position and overall failure to provide evidence from which a reasonable jury could find retaliation, the Court recommends the District Court deny Plaintiff's Motion for Summary

Judgment.

## VI.   Plaintiff's Motion for Preliminary Injunction

Plaintiff's Second Motion for Injunction asserts a number of issues related to Plaintiff's schooling, legal documents, and living arrangements. (Docket #131 at 1-3.)  In particular, Plaintiff claims that his school supervisor threatened him with negative reports, that other officers inspected and allegedly misappropriated his legal documents, and that he was housed in a cell with another inmate "who has a serious and potentially contagious disease." (*Id.*)  In connection with the alleged offenses, Plaintiff names Officers Bradshaw, Yarberry, Wilhemson, and Wright,  case manager R. Dick, and Lt. Fleckestein.  Aside from concluding that "the Defendant's associates has (sic) shown their willingness to cause [Plainitff] serious harm...[,]" Plaintiff does not mention Defendant or Defendant's actions anywhere in the motion.  (*Id.* at 4.)  Finally, Plaintiff makes no specific request for relief apart from his initial statement that "new developments may require a Court order prohibiting prison staff from harassing, intimidating, or [threatening] Plaintiff and his witnesses." (*Id.* at 1.)

Because a preliminary injunction is intended to preserve the status quo until the Court has an opportunity to reach the merits, a party moving for a preliminary injunction "must establish 'a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.'" *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010) (quoting *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994)).  The injuries alleged in the instant motion bear no relationship to the constitutional violation alleged in the underlying suit, namely Defendant's retaliatory instigation of gang violence against Plaintiff.  The only apparent connection is Plaintiff's belief that "prison staff[] inten[d] to cause [him] serious bodily harm" because of his participation in this

lawsuit.  However, Plaintiff's failure to attribute any of the "recent developments" to Defendant, either directly or indirectly, places his motion for injunctive relief outside the scope of his underlying First Amendment claim.

Plaintiff's failure to identify Defendant is also problematic because of the Court's general inability to enjoin  non-parties.  *See* Fed. R. Civ. P. 65(d).  According to Rule 65(d), an injunction binds only the parties, their "officers, agents, servants, employees, and attorneys," and other persons who are in active concert therewith.  Although Plaintiff alleges that the named prison officials are "associates" of Defendant, Plaintiff provides no evidence of the nature or extent their relationship. While the term "associates" is particularly vague, it does not describe an agency or employment relationship.  If anything, it suggests a relationship among equals.  Because Plaintiff has failed to show that Defendant exerted any influence over the named individuals, or that Defendant participated with them in "active concert," the Court is not persuaded that it could alter their behavior simply by enjoining Defendant.

Even if an injunction were proper, Plaintiff must also demonstrate that one is warranted.  A preliminary injunction is an extraordinary remedy that should be granted only when the moving party clearly and unequivocally demonstrates its necessity.  *See Schrier v. Univ. of Colo.,* 427 F.3d 1253, 1258 (10th Cir. 2005).  In the Tenth Circuit, a party requesting a preliminary injunction must clearly establish that: (1) the party will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits.  *Id.*

In this case, none of the injuries Plaintiff alleges are sufficiently imminent or irreparable to

support a preliminary injunction. Additionally, the Court has already determined that Plaintiff's underlying claim is not supported by the record; thus, there is little likelihood of success on the merits.

Because Plaintiff's motion for a preliminary injunction is not sufficiently related to his underlying claim against Defendant, the Court finds that a preliminary injunction is both improper and unwarranted. Accordingly, the Court recommends the District Court deny Plaintiff's Second Motion for Injunction.

**VI.   Conclusion**

Although Defendant has not demonstrated that Plaintiff failed to exhaust his administrative remedies, the Court finds that Defendant is entitled to qualified immunity insofar as Plaintiff has failed to demonstrate genuine issues of material fact regarding his First Amendment claim of retaliation. With respect to Plaintiff's motions, the Court finds that Plaintiff's motion for summary judgment is unsupported and improperly characterized, and Plaintiff's motion for a preliminary injunction falls outside the scope of this case. Accordingly, the Court respectfully RECOMMENDS that Defendant's Motion for Summary Judgment [filed September 9, 2011; docket #105] be **GRANTED**, Plaintiff's Motion for Summary Judgment [filed September 12, 2011; docket #110] be **DENIED**, and Plaintiff's Second Motion for Injunction [filed November 14, 2011; docket #131] be **DENIED**.

Dated at Denver, Colorado, this 3rd day of January, 2012.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty

United States Magistrate Judge